**Theorples ROBINSON, Plaintiff,**

v.

**Warren YOUNG; Gerald Heeringa; and Thomas Borgen, Defendants.**

No. 86–C–221–C.

United States District Court,
W.D. Wisconsin.

Feb. 24, 1987.

Theorples Robinson, pro se.

Thomas Brush, Madison, Wis., for defendants.

CRABB, Chief Judge.

This is a civil action for declaratory, injunctive, and monetary relief, brought pursuant to 42 U.S.C. § 1983, in which plaintiff claims that defendant prison officials deprived him of his right of procedural due process by upgrading various conduct reports from minor to major violations without a statement of reasons and by finding him guilty on other conduct reports without an adequate statement of reasons. Now before the court are the parties' cross-motions for summary judgment. Jurisdiction is present under 28 U.S.C. § 1331.

Defendants argue that treating each of plaintiff's conduct reports as a major violation was proper. They note first that several of the conduct reports were written for violations that automatically are major, and therefore involved no discretion on the part of the security director. Second, they argue that most of the conduct reports were issued prior to May 1, 1985, and that the administrative rules governing minor and major offenses then in effect created no liberty interest in having an offense classified as minor. In any case, defendants contend that reasons for designating the reports as major appear in the record. For the conduct reports issued after May 1, 1985, defendants contend that these reports contained the required statement of

reasons why the violations were being processed as major. Alternatively, defendants argue that if processing of the conduct reports as major was not proper, the case should be continued for ninety days pursuant to 42 U.S.C. § 1997e to require plaintiff to exhaust administrative remedies. Defendants further argue that even if treating the conduct reports as major was not proper, the error was purely procedural and therefore harmless. Finally, defendants contend that plaintiff was given an adequate statement of reasons for the findings of guilt at the challenged disciplinary proceedings.

Plaintiff contends that the Wisconsin Administrative Code provisions in effect prior to May 1, 1985, as well as the current regulations, create a liberty interest in not having a violation be processed as major without a statement of reasons. Plaintiff argues that none of the challenged major conduct reports, whether issued before or after May 1, 1985, contain a statement of the reasons for the designation. Further, plaintiff contends that the disciplinary committee's reasons for the guilty findings were inadequate because they relied solely upon the conduct reports. Plaintiff argues in addition that this case should not be continued for ninety days because his administrative remedies are neither adequate nor competent. Finally, plaintiff contends that he is entitled to more than the nominal damages generally awarded for purely procedural error.

Based on the pleadings, affidavits, and certified copies of prison records filed by the parties, I find that there is no genuine issue as to the following material facts.

## FACTS

At all relevant times, plaintiff was an inmate at the Waupun Correctional Institution at Waupun, Wisconsin. Defendant Young was the superintendent at Waupun, defendant Borgen was the security director, and defendant Heeringa was the former security director. Between November 30, 1980 and June 14, 1985, plaintiff was issued thirty-three conduct reports.[1] All thirty-three conduct reports were treated as major violations. Plaintiff was found guilty of some or all of the violations charged in each of the conduct reports.

On April 1, 1986, plaintiff submitted an inmate complaint concerning the conduct reports described in parts I and II below. On June 19, 1986, the inmate complaint investigator recommended that plaintiff's complaint be dismissed. In the summary of facts section of the report form, the investigator stated in part: "Complainant also advises this investigator that his case is currently under litigation, and was informed at the time of his interview that being that his case is pending litigation, no further action would be taken by this investigator via the ICRS [Inmate Complaint Review System]." The recommendation of the investigator was that: "Based on the above information, it is recommended this complaint be DISMISSED AS IT is pending litigation and as this investigator has been advised there are still issues relating to such procedure errors that have not foregone the complete litigation stage." On June 20, 1986, defendant Young affirmed the investigator's recommendation without comment.

## I.

*Conduct report 023562* was issued November 30, 1980 for disrespect, disruptive conduct, and misuse of state property. The disciplinary committee's report, in the section reporting the reasons for disposition, states "2nd repeated offense on disrespect & disruptive conduct in 90 days."

*Conduct report 014851* was issued December 1, 1980 for threats.

---

1. The remainder of the fact section of this order consists of a description of these 33 conduct reports, their contents and dispositions. For ease of reference in the opinion section, the facts concerning the conduct reports are divided into three sections. Section I contains the conduct reports issued prior to May 1, 1985 that plaintiff claims were improperly upgraded from minor to major violations. Section II contains the conduct reports issued after May 1, 1985 that plaintiff claims were improperly upgraded. Section III contains the conduct reports on which plaintiff claims he was found guilty without an adequate statement of reasons.

*Conduct report 024074* was issued December 1, 1980 for disrespect and disruptive conduct. The reasons for disposition section of the disciplinary committee's report states in part: "Due to seriousness of offense reprimand or partial sanction not considered."

*Conduct report 024075* was issued December 1, 1980 for disobeying orders and disrespect. The reasons for disposition section of the disciplinary committee's report states "3rd repeated offense on disrespect in 90 days."

*Conduct report 023555* was issued December 2, 1980 for disobeying orders and disrespect. The reasons for disposition section of the disciplinary committee's report states "3rd repeated offense in 90 day period."

*Conduct report 023511* was issued December 3, 1980 for disrespect. The reasons for disposition section of the disciplinary committee's report states "3rd repeated offense within 90 day period."

*Conduct report 35904* was issued May 5, 1981 for possession of intoxicants and unauthorized transfer of property. The substance that was confiscated from plaintiff tested positive for marijuana.

*Conduct report 48167* was issued June 10, 1981 for disobeying orders.

*Conduct report 35784* was issued July 10, 1981 for disrespect. On the face of 35784 is the notation "report #1 of 2 reports." Attached to 35784 is conduct report 001284, which was issued July 10, 1981 for disobeying orders, disrespect, and disruptive conduct. The reasons for disposition section of the disciplinary committee's report on the two conduct reports states "2nd offense on [Wis.Admin.Code § HSS] 303.24 in 90 day period."

*Conduct report 053240* was issued July 23, 1981 for lying. The reasons for disposition section of the disciplinary committee's report states in part "seriousness of offense (lying against staff member)."

*Conduct report 49603* was issued July 19, 1981 for disruptive conduct, disobeying orders, and disrespect. The reasons for disposition section of the disciplinary committee's report states "previous offenses on these rules."

*Conduct report 46600* was issued November 20, 1981 for disobeying orders, damage or alteration of property, misuse of state property, and unauthorized transfer of property. The reasons for disposition section of the disciplinary committee's report states "2nd repeated offense of [Wis. Admin.Code § HSS] 303.24 [disobeying orders] in 90 day period."

*Conduct report 83800* was issued March 15, 1982 for disrespect and disruptive conduct. The report of the disciplinary committee shows that plaintiff pled guilty to the charge of disrespect, and was found not guilty of the charge of disruptive conduct.

*Conduct report 49833* was issued March 23, 1982 for disrespect. The reasons for disposition section of the disciplinary committee's report states "2nd repeated offense in 90 day period."

*Conduct report 83808* was issued March 24, 1982 for disrespect, disruptive conduct, and threats. The reasons for disposition section of the disciplinary committee's report states "3rd repeated offense in 90 period on [Wis.Admin.Code § HSS] 303.25 [disrespect]. Offenses are considered to be very serious."

*Conduct report 98362* was issued November 27, 1982 for disrespect, disruptive conduct, and threats. The conduct report states that the complaining officer, who was taking inmates to the showers, put handcuffs on plaintiff and instituted a "pat shake." Plaintiff told the officer to "keep your hands off me." In the showers, when the officer removed the handcuffs, plaintiff said: "When you have the cuffs on me, you think your [sic] tough, now that the cuffs are off, let's see just how tough you are." Other inmates already in the shower area came to see what was occurring.

*Conduct report 94325* was issued February 10, 1983 for disrespect, disruptive conduct, and threats. The conduct report states that plaintiff made several loud comments which caused other nearby inmates to begin shouting.

*Conduct report 121854* was issued February 11, 1983 for threats, disrespect, and disruptive conduct. The reasons for disposition section of the disciplinary committee's report states "previous offense of threats on 2–8–82."

*Conduct report 94367* was issued February 28, 1983 for threats. The reasons for disposition section of the disciplinary committee's report states "2nd repeated offense of [Wis.Admin.Code § HSS] 303.16 in 90 day period."

*Conduct report 94271* was issued March 3, 1983 for threats. The reasons for disposition section of the disciplinary committee's report states "3rd repeated offense of [Wis.Admin.Code § HSS] 303.16 in 90 day period."

*Conduct report 129059* was issued September 21, 1983 for threats, disruptive conduct, and disrespect. The conduct report states that while plaintiff was in a holding cell at the federal courthouse in Madison, he threw his bag lunch on the floor and began making abusive comments. Two other inmates in the same holding cell joined in the conduct, which lasted for 20 to 25 minutes.

*Conduct report 142150* was issued October 7, 1983 for disrespect and disruptive conduct. The reasons for disposition section of the disciplinary committee's report states "2nd repeated offense of [Wis.Admin.Code § HSS] 303.25 [disrespect] in 90 day period."

*Conduct report 111178* was issued May 16, 1984 for refusal to work and disrespect. The reasons for disposition section of the disciplinary committee's report states: "Seriousness of offense occurring in work area with other inmates present. Overt disrespect towards staff."

*Conduct report 117139* was issued November 21, 1984 for disrespect, threats, and disobeying orders. A memorandum dated November 21, 1984, from Captain Nickel to Major Kahelski recommends treating the conduct report as major. In

the space captioned "Reason" the memorandum reads: "Disrespect & Threats. Inmate placed in TLU/AC." The reasons for disposition section of the disciplinary committee's report states "3rd [Wis.Admin. Code § HSS] 303.24 [disobeying orders] within a 6 month period. [Wis.Admin.Code § HSS] 303.25 [disrespect]—last one in May, 1984."

*Conduct report 115828* was issued December 28, 1984 for disrespect and disruptive conduct. A memorandum dated December 28, 1984, from Captain Palmeri to Major Kahelski recommends treating the conduct report as major. The reason given for the recommendation is "Several similar violations recently." The reasons for disposition section of the disciplinary committee's report states "2nd disrespect in 60 days."

*Conduct report 145771* was issued March 13, 1985 for disruptive conduct. Accompanying this conduct report is a form entitled "security director's review of conduct report," which lists the possible reasons for a conduct report to be processed as major. Under the heading "HHS 303.-68(3)" there is a check mark next to the line reading "c. The alleged violation created a risk of serious disruption at the institution or in the community." The form is dated March 13, 1985, and signed by a captain.[2] The reasons for disposition section of the disciplinary committee's report states: "It was an act of reckless horseplay on an open tier involving several inmates."

## II.

*Conduct report 141774* was issued June 13, 1985 for disrespect, threats, and battery. Plaintiff was found guilty on all three charges. The reason for decision section of the disciplinary committee's report states: "The hearing officer evaluated all of the evidence and reached the conclusion that the written statement of Officer Maske [the complaining officer] is cor-

---

**2.** The captain's signature appears on the form, but the handwriting is not sufficiently clear to make out the name.

rect."[3]

*Conduct report 141775* was issued June 14, 1985 for disrespect, threats, and disruptive conduct. A memorandum dated June 17, 1985 from Captain Polinske to Major R. Kahelski recommends treating the conduct report as a major violation, giving as the reason: "Inmate's overt behavior, as described in the text of the C.R., supports the charges as listed. Processing as a major C.R. is appropriate." The reasons for disposition section of the disciplinary committee's report states "Fourth major conduct report within 30 days."

*Conduct report 114468* was issued June 14, 1985 for threats, disrespect, and disruptive conduct. A memorandum dated June 14, 1985, from a captain or lieutenant[4] to Major R. Kahelski recommends treating the conduct report as a major violation. In the "reason" section, the memorandum lists the offenses charged. The reasons for disposition section of the disciplinary committee's report states "Third major conduct report within 30 days."

### III.

*Conduct report 83664* was issued March 16, 1982 for disobeying orders, battery, fighting, and disruptive conduct. Plaintiff was found guilty of all four charges. The reason for decision section of the disciplinary committee's report states: "Inmate admits to other charges except battery. Battery is supported in report plus statement noted below where Mr. Heeringa was contacted." At the bottom of the page is the statement: "Mr. Vaade contacted Officer Heeringa by phone. Off. Heeringa stated the blow was intentional." Statements by both plaintiff and his advocate state that the officer was caught in the middle and was struck by accident.

*Conduct report 84007* was issued May 17, 1982 for battery and fighting. Plaintiff was found not guilty of battery and guilty of fighting. Concerning the finding of guilt on the charge of fighting, the reason for decision section of the disciplinary committee's report states: "Inmate admits swinging at Allen. Witnesses are considered credible as they state Robinson did swing but did not hit Allen."

*Conduct report 94835* was issued December 5, 1983 for inciting a riot and disruptive conduct. Plaintiff was found guilty of both charges. The reasons for decision section of the disciplinary committee's report states: "Rely on statements in C.R. by officer and definition of intentionally in [Wis.Admin.Code § HSS] 303.04(1) [and] that inmate made statements to incite a riot and that by [three words illegible] calling out he was disruptive. The violations created a risk of serious disruption to the institution."

*Conduct report 90145* was issued May 1, 1983 for possession, manufacturing and alteration of weapons, damage or alteration of property, and possession of miscellaneous contraband. Plaintiff was found not guilty of the weapons charge, but guilty of damage or alteration of property and possession of miscellaneous contraband. The reason for decision section of the disciplinary committee's report states: "Inmate admitted to these offenses." Plaintiff's statement to the disciplinary committee states in part: "If someone has to be blamed for the pen I will claim it."

### OPINION

I will begin by addressing the various issues raised by the parties in connection with the conduct reports that were processed as major offenses. Following that, I will address the other issues of the adequacy of the statements of reasons for guilty findings, exhaustion of administrative remedies, and damages.

---

**3.** It is not clear whether plaintiff is objecting to this conduct report only on the ground that it was treated as a major violation or also on the ground of an inadequate statement of reasons for the finding of guilt. Although conduct report 141774 was not listed in plaintiff's complaint under the latter cause of action, he does mention it in his brief along with four other conduct reports in connection with an allegation of inadequate statements of reasons.

**4.** The memorandum states that it is from "Captain/Lieutenant" followed by an indecipherable signature or initials.

## I. *Conduct Reports Processed as Major Violations*

The parties raise several issues in connection with the conduct reports issued to plaintiff that were processed as major offenses. These conduct reports fall into three basic categories: those in which at least one automatic major violation was charged; those issued prior to May 1, 1985; and those issued after May 1, 1985.

### A. *Automatic major violations*

■ Defendants argue that several of the conduct reports challenged by plaintiff as improperly upgraded to major offenses were written for violations that are automatically major violations under the applicable administrative code provisions.

Four of these conduct reports were issued prior to May 1, 1985. Conduct reports 83664 and 84007 included a charge of battery, conduct report 94835 included a charge of inciting a riot, and conduct report 90145 included a charge of possession, manufacture and alteration of weapons.[5] The applicable administrative code provision in effect at the time these conduct reports were issued provided that battery, inciting a riot, and possession, manufacture and alteration of weapons were automatically major offenses. Wis.Admin.Code § 303.68(2) (1980). The code also provided that "[a]ny conduct report containing at least one charge of a major offense shall be handled as a major offense, even if it also includes minor offenses." Wis.Admin.Code § 303.68(4) (1980). Accordingly, the processing of these four conduct reports as major violations was proper, and summary judgment will be granted for defendants on this issue with respect to these conduct reports.

A fifth conduct report, number 141774, was issued in June 1985 and included a charge of battery along with charges of disrespect and threats. Section HSS 303.-68(3) (1985) of the Wisconsin Administra-tive Code provides that battery is automatically a major offense. The code provides further that "[a]ny conduct report containing at least one charge of a major offense shall be handled as a major offense, even if it also includes minor offenses." Wis.Admin.Code § HSS 303.68(5) (1985). Accordingly, the designation of conduct report 141774 as major was proper. Summary judgment will be granted for defendants on this conduct report.

### B. *Conduct reports issued prior to May 1, 1985*

All conduct reports listed in section I of the facts were issued prior to May 1, 1985. Prior to that date, the provisions of the administrative code governing major and minor offenses were as follows:

(3) An alleged violation of any section other than those identified as major in sub. (2) of this section may be treated as either a major or minor offense. The security director shall decide whether it should be prosecuted as a major or minor offense, if the offense has not been disposed of summarily in accordance with HSS 303.74. To determine whether an alleged violation should be treated as a major or minor offense, the following criteria should be considered:

(a) Whether the inmate has previously been found guilty of the same or a similar offense, how often, and how recently;

(b) Whether the inmate has recently been warned about the same or similar conduct;

(c) Whether the alleged violation created a risk of serious disruption at the institution or in the community;

(d) Whether the alleged violation created a risk of serious injury to another person; and

(e) The value of the property involved, if the alleged violation was actual or attempted damage to property, misuse of property, possession of money, gambling,

---

5. It does not appear from the complaint that plaintiff in fact challenges these four conduct reports on the basis of their treatment as major offenses. Indeed, in his reply brief to defendants' motion for summary judgment, plaintiff expressly disavows such a claim with respect to these four conduct reports. Nonetheless, since defendants have raised the issue, I will address it in the interests of a complete record.

unauthorized transfer of property, soliciting staff or theft.

Wis.Admin.Code § HSS 303.68(3) (1980). The first issue raised by the parties is whether plaintiff has a ·protected liberty interest under these provisions in not having his conduct reports processed as major violations.

### 1. Liberty interest

■ Defendants argue that the language of subsection (3) of the 1980 provisions that certain criteria "should be considered" does not create a liberty interest. In support of their position, defendants cite an unpublished opinion by another court of this district, holding that HSS 303.68(3) (1980) did not create a protected liberty interest in having offenses not treated as major violations. *Lakes v. Young*, Nos. 85–C–485–S and 85–C–541–S, slip op. at 7–8 (W.D.Wis. Sept. 11, 1986) (Shabaz, J.) [Available on WESTLAW, 1986 WL 15867]. Plaintiff counters that the 1980 provisions did create a liberty interest, citing two decisions of the Wisconsin court of appeals, both of which held that prisoners had a protected liberty interest under HSS 303.68(3) (1980) in not having their conduct reports upgraded to major offenses. *State ex rel. Staples v. Dept. of Health and Social Services*, 128 Wis.2d 531, 384 N.W.2d 363 (Ct.App.1986); *State ex rel. Staples v. Dept. of Health and Social Services*, 130 Wis.2d 308, 387 N.W.2d 551 (Ct.App.1986).

In an order entered March 3, 1986, I relied on the reasoning of the Wisconsin state courts in finding that the administrative code provision created a protected liberty interest.[6] *Staples v. Traut*, 675 F.Supp. 460, 467–468 (W.D.Wis. 1986) (Crabb, J.). In that order I stated that: "A decision by the security director to upgrade a violation

is reviewable by certiorari by the state courts on an arbitrary and unreasonable standard. [citing *State ex rel. Staples*, 128 Wis.2d 531, 384 N.W.2d 363.] This is persuasive evidence that Wis.Admin.Code § HSS 303.68(3) (1980) creates a liberty interest. I conclude that it does." *Staples v. Traut*, at 468. Nothing in the arguments submitted by defendants has persuaded me that that conclusion, which relied upon the holding of the Wisconsin state courts, is incorrect. Accordingly, I reaffirm that Wis.Admin.Code § HSS 303.-68(3) (1980) creates a protected liberty interest.[7]

### 2. Procedural protections

■ In *Staples v. Traut*, I discussed also the extent of the procedural protections that attach to an inmate's liberty interest in having the security director consider the applicable criteria before classifying a conduct report as a major offense. *Id.* at 468. I noted first that the Wisconsin state courts require an explicit statement in the record setting forth the reasons for the classification as major. *See State ex rel. Staples*, 128 Wis.2d at 535, 384 N.W.2d 363; *Staples ex rel. Staples*, 130 Wis.2d at 310, 387 N.W.2d 551. However, I concluded that "federal law requires at a minimum that the reason for the decision be evident from the face of the report, if it is not articulated by the security director." *Staples v. Traut*, at 468.

Defendants argue that in each case reasons for designating the offenses as major violations are evident from the face of the record. More specifically, defendants contend that in most instances the disciplinary committee's disposition of the conduct report indicates why the violation was con-

---

**6.** I am somewhat concerned that defendants failed to refer to this opinion in their brief. Although the order of March 3, 1986 was unpublished, defendants' counsel in that case was a member of the same law firm as defendants' counsel in the present case. It would appear that defendants should have been aware that this court had ruled previously on the question of the liberty interest created by HSS 303.68(3) (1980), and not treated the issue as an open question.

**7.** In their reply brief, defendants concede that "the plaintiff's due process rights would have been violated if he had a protected liberty interest in not having his Conduct Report offenses treated as major offenses." Defts' Reply Brief at 3. Despite this apparent admission, I will consider whether in each case plaintiff received the procedural protections to which he was entitled.

sidered to be major,[8] and that where the reason is not evident from the disposition statement, the record contains other evidence from which the reasons may be inferred.

Defendants' argument misconstrues the standard for procedural protections. In *Staples v. Traut* I stated that the minimum procedure required by federal law was either an articulation of reasons by the security director or that the reasons be evident from the face of the conduct report. As evidence of the security director's reasons, defendants offer the reasons given by the disciplinary committee for their dispositions, following adjudication of the merits of the conduct reports. The Wisconsin state courts have addressed this precise issue, in a case where prison officials "suggest[ed] that we may glean the director's reason from an examination of the committee's ultimate statement as to why it selected the penalty it did." *State ex rel. Staples*, 130 Wis.2d at 311, 387 N.W.2d 551. Responding to this suggestion, the Wisconsin court of appeals stated:

> While it might be possible in this case to work backward from the committee's disposition notation and assume that the repeater aspect of the offense was also the reason underlying the security director's reclassification of the violation, we decline to do so. Wisconsin Administrative Code, sec. HSS 303.68(3) (1980), is clear in its mandate to the director to consider the listed criteria. And, when he or she upgrades a violation from minor to major status, the reason for the decision must be stated in the record.

*Id.* at 311–12, 387 N.W.2d 551. I find the reasoning of the Wisconsin state courts persuasive. I will not speculate from the disposition statement of the disciplinary committee that the security director's reason for designating the conduct report as a major offense would have been the same reason given by the disciplinary committee for its disposition. The disciplinary committee's after the fact statements do not satisfy the requirement that the security director articulate the reasons for upgrading the conduct reports to major offenses.

Similarly, the memorandums from various lieutenants and captains to Major Kahelski recommending that conduct reports be processed as major violations do not constitute a statement of reasons by the security director. The security director's reasons may not be inferred from the recommendations of his subordinates for the same reason that they may not be inferred from the disposition statements of the disciplinary committee. The due process requirement is that the security director articulate the reasons for processing the conduct report as a major violation. The statement of reasons "need not be lengthy or detailed," *State ex rel. Staples*, 128 Wis.2d at 536, 384 N.W.2d 363, but it must be affirmatively stated in the record. Requiring a court to guess about the reasons by examining extraneous parts of the record does not comport with due process.

However, conduct report 145771, issued March 13, 1985, is an exception. Included as part of the record on this conduct report is a form entitled "security director's review of conduct report," on which the reason for processing the report as a major violation is indicated. I find that this statement of reasons satisfies the due process requirement that the security director articulate the reason for the decision to upgrade the conduct report to a major violation. Accordingly, summary judgment will be granted to defendants on conduct report 145771.

Federal law does not necessarily require that a statement of reasons by the security director appear in the record if the reasons for processing the conduct report as a major offense are clear from the face of the conduct report. *Staples v. Traut*, slip op. at 18. I note initially that the face of the conduct report does not include the report

---

**8.** In most instances where defendants claim that the disciplinary committee's report indicates the reasons why the conduct was considered major, defendants refer to notations that the offense or offenses then under consideration were repeat offenses within a short period of time. See conduct reports 023562, 024075, 023555, 023511, 35784, 49603, 46600, 49833, 83808, 121854, 94367, 94271, 142150, 117139, and 115828.

of the disciplinary committee proceedings or memorandums to the security director. Rather, this due process requirement is satisfied if it is evident from the information contained within the four corners of the conduct report that the offense should be a major violation.

I have examined each of the conduct reports described in section I of the fact section of this opinion.[9] In each case I conclude that the reasons of the security director for processing the conduct report as a major violation are not evident from the face of the report.[10] There is no indication on the face of any of the conduct reports that plaintiff was recently found guilty or warned of similar offenses. There is no indication of the value of any property damaged. And I cannot conclude from the face of the reports that any of them evidences a risk of serious disruption to the institution or a risk of serious injury to another person. The conduct reports taken as a whole indicate a pattern of vulgarity and profanity, of disrespectful comments, often of a sexual nature, of threatening remarks, and of general offensive behavior. However, where the security director has not articulated the reasons for upgrading the offense to a major violation, a reviewing court cannot simply speculate that such comments or actions might warrant major violation treatment; those reasons must be evident from the face of the individual conduct reports. Extraneous information, including other conduct reports, cannot be considered.

Accordingly, summary judgment will be granted to plaintiff on conduct reports 023562, 014851, 024074, 024075, 023555, 023511, 35904, 48167, 35784, 053240, 49603, 46600, 83800, 49833, 83808, 98362, 94325, 121854, 94367, 94271, 129059, 142150, 111178, 117139, and 115828 on the ground that his right to due process was violated because the conduct reports were upgraded to major violations without either a statement of reasons by the security director or the reasons' being evident from the face of the conduct reports.

## C. *Conduct reports issued after May 1, 1985*

Effective May 1, 1985, section HSS 303.-68 of the Wisconsin Administrative Code was amended. The applicable code section now provides that:

(4) An alleged violation of any section other than ones listed in sub. (3) may be treated as either a major or minor offense. The security director shall decide whether it should be treated as a major or minor offense, if the offense has not been disposed of summarily in accordance with s. HSS 303.74. In deciding whether an alleged violation should be treated as a major or minor offense, the security director shall consider the following criteria and shall indicate in the record of disciplinary action the reason for the decision based on these criteria:

(a) Whether the inmate has previously been found guilty of the same or a similar offense, how often, and how recently;

(b) Whether the inmate has recently been warned about the same or similar conduct;

(c) Whether the alleged violation created a risk of serious disruption at the institution or in the community;

(d) Whether the alleged violation created a risk of serious injury to another person; and

(e) The value of the property involved, if the alleged violation was actual or attempted damage to property, misuse of property, possession of money, gambling, unauthorized transfer of property, soliciting staff or theft.

---

**9.** I have not examined conduct report 145771 to see if the reasons are evident from the face of the report, since a statement of reasons was provided for that conduct report.

**10.** I will not detail in this order what information appeared in the various conduct reports, and I do not append the reports to this order. Both parties submitted copies of the reports with their materials on the cross motions for summary judgment. It is therefore obvious that both parties have all the relevant documents and that the conduct reports are part of the record. Consequently, detailing the contents of each report would be repetitive and unnecessary.

Wis.Admin.Code § HSS 303.68(4) (1985). The first question is whether the 1985 administrative code creates a liberty interest in the same way that the 1980 code did.[11]

■ Initially, I note that the 1985 regulations now state that the security director *"shall* consider the following criteria and *shall* indicate in the record of disciplinary action the reason for the decision based on these criteria." Wis.Admin.Code § HSS 303.68(4) (1985) (emphasis added). The security director now is mandated both to consider certain criteria and to state his reasons in the record.

The Court of Appeals for the Seventh Circuit recently has explained the "difference between criteria and binding rules of decision." *Miller v. Henman,* 804 F.2d 421, 424 (7th Cir.1986). Mere criteria, the court states, "remain statements of the way in which discretion is exercised but do not establish substantive rights." *Id.* By contrast, binding rules of decision are those written standards that create substantive restrictions. *Id.* "The enforceability of the substantive criteria in turn would create a liberty or property interest. When a regulation or rule with binding force establishes substantive criteria, it also creates constitutional 'liberty' or 'property.'" *Id.*

The 1985 amendments to the administrative code established more than mere statements of the way in which the security director is to exercise discretion. The security director is accorded no discretion in two vital areas: he must consider the listed criteria and he must indicate his reasons in the record. I conclude that these requirements establish substantive restrictions on the exercise of discretion by the security director, and create a liberty interest in an inmate's receiving a statement of reasons for the treatment of conduct reports as major violations. As with the statement of reasons under the former code provisions, the security director's statement does not

need to be lengthy or detailed, but it must be sufficient to permit a reviewing court to determine why the decision was made. *See State ex rel. Staples,* 128 Wis.2d at 536, 384 N.W.2d 363.

■ Conduct reports 141775 and 114468, described in section II of the fact section, were issued after May 1, 1985 for offenses that could be processed as either minor or major. In neither case did the security director include as part of the record a statement of reasons for processing the reports as major violations. In both cases defendants point to the reasons given for disposition in the reports of the disciplinary committee, and in both cases the record includes memoranda from a captain or lieutenant recommending that the report be treated as a major offense. However, the same objections to these documents are present under the 1985 code as under the 1980 code.

The 1985 amendments to the administrative code clearly require an indication in the record by the security director of his reasons for processing a conduct report as a major offense. A reviewing court cannot infer his reasons from the reasons for disposition stated by the disciplinary committee or from the recommendations of his subordinates prior to his decision. There must be in the record a statement by the security director of his reasons for the treatment of the conduct report. No such statement appears in the record of either conduct report 141775 or conduct report 114468. Accordingly, summary judgment will be granted to plaintiff on these two conduct reports.

II. *Statements of Reasons for Findings of Guilt*

The parties dispute the adequacy of the statements of reasons given by the disciplinary committee for its findings of guilt in the case of five conduct reports.[12] Defend-

11. State administrative regulations may give rise to a cognizable liberty or property interest. "We reject the view that state administrative pronouncements are in some juridical sense so inferior to statutory or judicial sources of legal rules that they are not worthy of constitutional

recognition." *Shango v. Jurich,* 681 F.2d 1091, 1099 (7th Cir.1982).

12. As noted in the facts section of this order, plaintiff's complaint alleges an inadequate statement of reasons for conduct reports 83664, 84007, 94835, and 90145. In plaintiff's brief,

ants argue that the reasons for decision sections of the disciplinary committee's reports establish constitutionally adequate statements of reasons. Plaintiff counters that his right to due process was violated because the disciplinary committee's reasons either rely solely upon the conduct report or do not adequately explain what evidence was relied upon and why.

The due process rights that attach to prison disciplinary proceedings were defined in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Among those due process rights is the requirement "that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* at 564, 94 S.Ct. at 2979. Such a statement of reasons is constitutionally inadequate if it merely incorporates the conduct report. *Hayes v. Walker*, 555 F.2d 625, 633 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); *United States v. Warden, Stateville Correctional Center*, 635 F.2d 656, 659 (7th Cir.1980), *cert. denied*, 454 U.S. 843, 102 S.Ct. 156, 70 L.Ed.2d 128 (1981). An adequate statement of reasons, rather, must "[point] out the essential facts upon which inferences were based," *Hayes*, 555 F.2d at 633, "mention what evidence the reporting officer relied on" and give a "clear indication of why the reporting officer was to be believed rather than [the inmate or other witnesses]," *Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981).

The line between constitutional adequacy and inadequacy is a fine, but important one. When the Committee writes "based on all available evidence the resident is guilty," no agency or court can discern the basis for the Committee's rulings. If, however, the Committee writes "resident is lying," or "the guard saw him therefore ...," or "resident admits he committed the act charged," or "resident does not refute charges," or another statement establishing the evidence underlying its decision,

then the inmate is protected from a mischaracterization of the disciplinary action when it comes under review.

*Redding v. Fairman*, 717 F.2d 1105, 1116 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984) (footnote omitted). The five challenged disciplinary committee reports will be examined against these standards.

■ I find that the statement of reasons on conduct reports 84007 and 90145 are constitutionally adequate. The statement of reasons on conduct report 84007 includes plaintiff's admission that he swung at another inmate and indicates why the witnesses are considered credible. The statement of reasons on conduct report 90145 is based, if not on plaintiff's actual admission of guilt, at least on his avowed willingness to take the blame. In both cases, it is clear from the statement of the disciplinary committee what evidence it relied upon and why. Summary judgment will be granted to defendants on these two conduct reports.

■ The remaining three conduct reports are more problematic. The statement of reasons on conduct report 141774 reads: "The hearing officer evaluated all of the evidence and reached the conclusion that the written statement of Officer Maske [the complaining officer] is correct." Initially, I note that the Court of Appeals for the Seventh Circuit has stated that "[t]he phrases 'based on all available evidence' or 'all evidence presented' are conclusory; they do not disclose what evidence forms the bases of the Committee rulings." *Redding*, 717 F.2d at 1115. In particular, in this instance, "no reasons are given for discounting the inmate['s] contradictory evidence." *Id.* (footnote omitted). Furthermore, I find the statement of reasons supplied on conduct report 141774 essentially indistinguishable from the statement of reasons found constitutionally inadequate in *Chavis v. Rowe*, 643 F.2d at 1287 (" 'We recognize and consider the resident[']s statement[,], however[,] we accept the re-

however, he appears to argue also that he was found guilty on conduct report 141774 without

an adequate statement of reasons. All five conduct reports will be addressed in this opinion.

porting officer[']s charges.' "). Summary judgment will be granted to plaintiff on this conduct report.

■ The statement of reasons on conduct report 94835 states: "Rely on statements in C.R. by officer and definition of intentionally in [Wis.Admin.Code § HSS] 303.04(1) [and] that inmate made statements to incite a riot and that by [three words illegible] calling out he was disruptive." Plaintiff was found guilty in this instance of inciting a riot and disruptive conduct. Plaintiff's statement, as reported on the disciplinary committee's form, was that he was not talking about a take over and that he wanted no part of a take over, but that "I may be guilty of disruptive conduct." [13] I will assume that the disciplinary committee relied upon plaintiff's statement to find him guilty of the charge of disruptive conduct, although the summary of reasons does not so indicate. *See Redding,* 717 F.2d at 1115–16. Accordingly, summary judgment will be granted to defendants as to the charge of disruptive conduct in this conduct report.

The charge of inciting a riot, however, presents a different picture. Plaintiff denied any involvement in inciting a riot, and "no. reasons are given for discounting the inmate['s] contradictory evidence." *Id.* (footnote omitted). Moreover, in *Hayes v. Walker,* 555 F.2d at 631, the court of appeals rejected the following statement of reasons: "The Committee's decision is based on the violation report as written and upon the report by the special investigator which during your absence was made part of the record." I find no significant difference between the constitutionally defective statement in *Hayes* and the statement given by the disciplinary committee in its report concerning the charge of inciting a riot in conduct report 94835. Summary judgment will be granted to plaintiff as to the charge of inciting a riot in this conduct report.

■ Plaintiff was found guilty on conduct report 83664 of disobeying orders, battery, fighting, and disruptive conduct. The statement of reasons supplied by the disciplinary committee states: "Inmate admits to other charges except battery. Battery is supported in report plus statement noted below where Mr. Heeringa was contacted." Plaintiff's statement as reported by the disciplinary committee was: "I said to him don't touch me. Jack jumped in between us. He was just caught in between us. He was struck by accident." The statement of Herringa, written at the bottom of the committee's report form, was that the blow was intentional.

As to the findings of guilt on the charges of fighting and disruptive conduct, it can be assumed that the disciplinary committee relied upon plaintiff's admissions, even though the summary does not so state. *Redding,* 717 F.2d at 1115–16. However, I find nothing in plaintiff's statement to the disciplinary committee which would support a finding that he admitted to disobeying orders. Accordingly, I cannot conclude that the disciplinary committee's statement of reasons is adequate concerning the finding of guilt on the charge of disobeying orders. In addition, plaintiff denied striking the blow intentionally, and "no reasons are given for discounting the inmate['s] contradictory evidence." *Id.* at 1115. With regard to this conduct report, summary judgment will be granted to defendants as to the charges of fighting and disruptive conduct. Summary judgment will be granted to plaintiff as to the charges of disobeying orders and battery.

### III. *Continuation Pursuant to 42 U.S.C. § 1997e*

■ Defendants contend that if summary judgment is not granted to them, the court should not grant summary judgment to plaintiff but should continue the action for 90 days pursuant to 42 U.S.C. § 1997e(a) to require plaintiff to exhaust

---

**13.** It is permissible to consider such portions of the disciplinary committee's record in determining the adequacy of the statement of reasons. "Evaluating the form summaries as a whole by combining the sections 'Record of Proceedings' with the sections 'Basis for Decision/Evidence Relied Upon' rescues two of the eighteen summaries from constitutional inadequacy." *Redding,* 717 F.2d at 1115.

his administrative remedies. Section 1997e(a) provides that:

(1) Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed ninety days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

(2) The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under subsection (b) of this section.

The record reveals that on April 1, 1986, plaintiff filed an inmate complaint concerning the upgrading of his conduct reports from minor to major offenses. On June 19, 1986, the inmate complaint investigator recommended that plaintiff's complaint be dismissed on the ground that this court case was pending on the same issue. On June 20, 1986, defendant Young affirmed the inmate complaint investigator's recommendation.

Defendants contend that these events show that plaintiff failed to exhaust available administrative remedies because the prison "must wait" for the outcome of the court case before proceeding on plaintiff's complaint. Accordingly, defendants request a 90 day continuation to permit the institution to address plaintiff's complaint. Plaintiff counters that he did attempt to exhaust his administrative remedies by filing the inmate complaint, that exhaustion is not mandatory under § 1997e, and that since defendants have had ample opportunity to address his concerns through the inmate complaint system, requiring him to exhaust would be futile.

As an initial matter, I note that "Section 1997e and its legislative history demonstrate that Congress understood that ex-

haustion is not generally required in § 1983 actions, and that it decided to carve out only a narrow exception to this rule." *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 508, 102 S.Ct. 2557, 2563, 73 L.Ed.2d 172 (1982). There are two prerequisites to the narrow exception of § 1997e: that the Attorney General certify or the court determine that the available administrative remedies are in substantial compliance with minimum acceptable standards and that the court conclude that exhaustion would be both appropriate and in the interests of justice. *Id.* at 510–11, 102 S.Ct. at 2565; 42 U.S.C. § 1997e(a).

Leaving aside the fact that the Attorney General has not certified and this court has not determined that the available administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under § 1997e(b), I cannot conclude that a requirement of exhaustion in this case would be either appropriate or in the interests of justice. Plaintiff filed an inmate complaint with the institution. That complaint was dismissed pending the outcome of this litigation. Defendants offer no explanation why the institution "must wait" for the outcome of the court case rather than proceed concurrently through administrative channels.

I conclude that in this case defendants have waived any possible requirement of exhaustion by choosing to dismiss plaintiff's inmate complaint pending the outcome of this litigation. Accordingly, I do not find that a continuation would be either appropriate or in the interests of justice.

### IV. *Remedy*

In his complaint, plaintiff requested both monetary relief and that the conduct reports be expunged from his record. I will address each of these remedies in turn.

 Defendants contend that even if plaintiff's due process rights were violated, the error is only procedural and consequently plaintiff is entitled to no more than nominal damages. By contrast, plaintiff argues that he is entitled to compensatory and punitive damages. He alleges that because of conduct reports that were up-

graded or on which he was found guilty in violation of his constitutional rights, he was placed in solitary confinement or isolation, suffered stress and mental anguish, lost property, canteen, exercise, and visiting privileges, and lost his institution job and wages. He contends further that these conduct reports were used as a basis to deny him parole and to deny him a transfer to a lesser security institution.

I find that there is insufficient evidence in the record on which to determine whether plaintiff is entitled to more than nominal damages and, if so, in what amount. The United States Supreme Court has held recently that a plaintiff may recover compensatory damages in a § 1983 action only if he is able to prove "actual injury caused by the denial of his constitutional rights." *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). It may be that, at a trial, defendants will be able to show that plaintiff would have suffered the same consequences absent any denial of his constitutional right of due process. Accordingly, a date will be established for a trial on the issue of damages only.

 Plaintiff also requests that the conduct reports that were found to be processed as major offenses in violation of his due process rights or on which he was found guilty without an adequate statement of reasons be expunged from his prison records. "The expunction of a disciplinary violation from a prisoner's record may be appropriate when that violation was established contrary to due process guarantees." *Redding v. Fairman,* 717 F.2d at 1118; *Hayes v. Thompson,* 637 F.2d 483, 493 (7th Cir.1980). The decision whether to expunge an inmate's records requires the district court to balance the institution's interests in maintaining accurate records and insuring prison security with the prisoner's interest in avoiding undeserved adverse consequences. *Redding,* 717 F.2d at 1119.

In this case I conclude that plaintiff's interests outweigh the interests of defendants. Twenty-seven of plaintiff's conduct reports were processed as major offenses in violation of plaintiff's due process guarantees. In the case of one entire conduct report and parts of two others, the reasons for the guilty findings were such that "[n]o agency or court in the future will be able to properly assess the basis for the Committee's decisions in those cases." *Id.* The defects in the institution's procedures significantly affected the penalties imposed upon plaintiff and this court's ability to review the disciplinary committee's proceedings. *See Hayes,* 637 F.2d at 493.

The plain meaning of this conclusion is that the guilty finding is invalid and cannot be allowed to remain. Not only would its presence implicitly vindicate the unlawful procedures used by the administrative officials in this case, but it would burden [the inmate] with the adverse collateral consequences of a serious violation. It would be repugnant to the meaning of constitutional protections if such a violation were allowed to work its harm in spite of its tainted origin. *Id.* Accordingly, I will order expunged from plaintiff's records those conduct reports which were processed as major offenses in violation of plaintiff's due process rights and those guilty findings for which the statement of reasons given by the disciplinary committee was constitutionally inadequate.

### ORDER

On the claim that plaintiff's conduct reports were processed as major offenses in violation of due process, IT IS ORDERED as follows:

(1) Summary judgment is GRANTED FOR DEFENDANTS on conduct reports 83664, 84007, 94835, 90145, and 141774 on the ground that these conduct reports include offenses that are required by administrative regulation to be processed as major violations.

(2) Summary judgment is GRANTED FOR DEFENDANTS on conduct report 145771 on the ground that the security director stated on the record his reasons for processing the conduct report as a major offense.

(3) Summary judgment is GRANTED FOR PLAINTIFF on conduct reports 023562, 014851, 024074, 024075, 023555, 023511, 35904, 48167, 35784, 053240, 49603, 46600, 83800, 49833, 83808, 98362, 94325, 121854, 94367, 94271, 129059, 142150, 111178, 117139, and 115828 on the ground that these reports were processed as major violations without a statement of reasons by the security director and without the reasons for the treatment being evident from the face of the conduct reports. Defendants are ordered to expunge these conduct reports from plaintiff's records.

(4) Summary judgment is GRANTED FOR PLAINTIFF on conduct reports 141775 and 114468, issued after May 1, 1985, on the ground that there appears in the record no statement by the security director of reasons for treating the reports as major violations. Defendants are ordered to expunge these conduct reports from plaintiff's records.

On the claim that plaintiff was found guilty by the disciplinary committee without an adequate statement of reasons, IT IS ORDERED as follows:

(1) Summary judgment is GRANTED FOR DEFENDANTS on conduct reports 84007 and 90145.

(2) Summary judgment is GRANTED FOR PLAINTIFF on conduct report 141774. Defendants are ordered to expunge this conduct report from plaintiff's records.

(3) On conduct report 94835, summary judgment is GRANTED FOR DEFENDANTS with regard to the charge of disruptive conduct. Summary judgment is GRANTED FOR PLAINTIFF with regard to the charge of inciting a riot. Defendants are ordered to expunge from plaintiff's records the finding of guilt on the charge of inciting a riot.

(4) On conduct report 83664, summary judgment is GRANTED FOR DEFENDANTS with regard to the charges of fighting and disruptive conduct. Summary judgment is GRANTED FOR PLAINTIFF with regard to the charges of disobeying orders and battery. Defendants are ordered to expunge from plaintiff's records the findings of guilt on the charges of disobeying orders and battery.

IT IS ORDERED further that defendants' request for a 90 day continuation pursuant to 42 U.S.C. § 1997e is DENIED. Defendants' request that only nominal damages be awarded also is DENIED. The clerk of courts is directed to set a date for a trial in this case on the issue of damages with regard to those conduct reports or particular charges in conduct reports on which summary judgment has been granted for plaintiff.